IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TUXIS TECHNOLOGIES, LLC,

    Plaintiff,

v.

AMAZON.COM, INC.,

    Defendant.

Civil Action No. 13-1771-RGA

MEMORANDUM OPINION

Brian E. Farnan, Esq., FARNAN LLP, Wilmington, DE; Andrew G. Heinz, Esq. (argued), DESMARAIS LLP, New York, NY.

    Attorneys for Plaintiff Tuxis Technologies, LLC.

Steven J. Balick, Esq., ASHBY & GEDDES, Wilmington, DE; William H. Baumgartner, Jr., Esq. (argued), SIDLEY AUSTIN, LLP, Chicago, IL.

    Attorneys for Defendant Amazon.com, Inc.

September 3, 2014

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is the Motion of Amazon.com, Inc. to Dismiss for Failure to State a Claim. (D.I. 10). The motion is fully briefed (D.I. 11, 12 & 14) and oral argument was held on May 23, 2014. (D.I. 21). For the reasons that follow, Amazon.com Inc.'s Motion is granted with respect to claim 1.[1]

## I. BACKGROUND

This is a patent infringement case filed by Tuxis Technologies, LLC on October 29, 2013. (D.I. 1). Tuxis alleges infringement of the 6,055,513 ("the '513 patent") against Amazon.com, Inc. The '513 patent relates to a method of upselling, and the patentees describe the invention as follows:

> Apparatus and methods are provided for effecting remote commerce, such as in telemarketing (either inbound or outbound) and in electronic commerce, which are particularly adapted for the intelligent selection and proffer of products, services or information to a user or customer. In one aspect of the invention, goods, service[s] or information are provided to the user via electronic communication, such as through a telephone, videophone or other computer link, as determined by the steps of first, establishing communication via the electronic communications device between the user and the system to effect a primary transaction or primary interaction, second, obtaining data with respect to the primary transaction or primary interaction, including at least in part a determination of the identity of the user or prospective customer, third, obtaining at least a second data element relating to the user, fourth, utilizing the primary transaction or primary interaction data along with the at least second data element as factors in determining at least one good, service or item of information for prospective upsell to the user or prospective customer, and offering the item to the prospective customer. In the preferred embodiment, the selection of the proffer of goods, services or information comprises an upsell with respect to the primary transaction or primary interaction data. The offer of the upsell is preferably generated and offered in real time, that is, during the course of the communication initiated with the primary transaction or primary interaction.

---

[1] Claim 1 is the only claim that received any significant attention during the briefing and oral argument. Therefore, the Court's invalidity determination is confined to that claim.

1

'513 patent, Abstract. Claim 1 of the '513 patent is representative of the numerous asserted claims. Claim 1 recites:

> A method for providing offers in real time of an item constituting a good or a service in the form of offers for purchase of the item to prospective customers as users of the system, utilizing an electronic communications device, comprising the steps of:
> establishing a communication via the electronic communications device between the user and the system for [the] purpose of a user initiated primary transaction for purchase of a specific good or service,
> obtaining primary transaction data with respect to the primary transaction, including the identity of the prospective customer and of the good or service for purchase in the primary transaction,
> generating an upsell offer as a result of the user initiated primary transaction by:
> utilizing the identity of the prospective customer to obtain at least a second data element relating to the user,
> utilizing at least in part the primary transaction data including the identity of the good or service of the primary transaction and the second data element and determining at least one item for a prospective upsell transaction with the prospective customer, and
> offering the item to the prospective customer and receiving an acceptance of the offer from at least one user in real time during the course of the user initiated communication.

*Id.*, claim 1. The term "upsell" is defined in the patent to be "an offer or provision of a good or service which is selected for offer to the customer and differs from the good or service for which the primary contact was made." *Id.* at 13:38-41. The patentee defined "real time" as "during the course of the communication initiated with the primary transaction or primary interaction." *Id.* at Abstract.

In response, Amazon asserts the '513 patent's claims are invalid because they do not claim patent-eligible subject matter under 35 U.S.C. § 101.

2

## II. LEGAL STANDARD

At the motion to dismiss stage a patent claim can be found directed towards patent ineligible subject matter if the "*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility."[2] *Ultramercial, Inc. v. Hulu, LLC,* 722 F.3d 1335, 1339 (Fed. Cir. 2013) (emphasis in original), *vacated,* 134 S. Ct. 2870 (2014).[3] Section 101 provides that, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. To this broad statement of what can be protected via a patent, the Supreme Court has recognized "three narrow categories of subject matter outside the eligibility bounds of § 101—laws of nature, physical phenomena, and abstract ideas." *Ultramercial,* 722 F.3d at 1341. The purpose of these carve outs are to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289, 1293 (2012). However, "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," but "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (quotation marks and italics omitted). The "[Supreme Court] has . . . made clear [that] to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

---

[2] The Court issued an oral order directing Tuxis to identify the asserted claims in the '513 patent and provide proposed constructions for any claim terms it believed required construction. Tuxis indicated that two important terms, "upsell" and "real time," are defined in the patent and that "the remaining terms in the asserted claims of the '513 patent . . . are used in accordance with their plain and ordinary meaning, and thus do not require construction." (D.I. 15, p. 1).

[3] Although the Supreme Court vacated and remanded the *Ultramercial* decision for further consideration in light of its recent opinion in *Alice Corp.,* I do not believe any of the propositions for which I cite *Ultramerical* have been overruled.

3

The Supreme Court recently reaffirmed the framework laid out in *Mayo* for distinguishing "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___, at ___ (slip op., at 7) (2014). First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to the rest of the claim to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("[T]he court must first 'identify and define whatever fundamental concept appears wrapped up in the claim.' Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether 'additional substantive limitations . . . narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.'" (internal citation omitted)). Furthermore, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010) (internal quotation marks omitted).

## III. DISCUSSION

In applying the framework set out above, it is clear that the claim 1 of the '513 patent is drawn to unpatentable subject matter. It claims the fundamental concept of upselling—a marketing technique as old as the field itself. While the additional limitations of the claim do narrow its scope, they are insufficient to save it from invalidity.

4

### 1. Fundamental Concept

Claim 1 is a method claim, and therefore falls within the statutory class of processes. *See* 35 U.S.C. § 100(b). Amazon argues that claim 1 is "directed to the basic idea of offering something to a customer based on his or her interest in something else," a concept that "has been a cornerstone of commercial activity since time immemorial." (D.I. 11, p. 9). It "simply deconstruct[s] the abstract concept of cross-selling[4] into a series of constituent and inherent steps according to which a customer makes contact with a merchant for the purpose of one purchase transaction, and the merchant offers a second purchase transaction." (*Id.* at p. 10 (footnote added)). Tuxis agrees upselling is an abstract idea. (D.I. 12, p. 7). Instead, Tuxis argues that "the claims are patent-eligible because they are meaningfully limited and do not pre-empt use of that abstract concept." *Id.* Because the parties are in accord regarding the classification of upselling as an abstract idea, the § 101 analysis progresses to the second step.

### 2. Preemption Analysis

Once an abstract idea is identified, the Court must perform a preemption analysis and determine whether the remainder of the claim includes limitations that "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Accenture*, 728 F.3d at 1341. "[T]he relevant inquiry is whether a claim, as a whole, includes meaningful limitations restricting it to an application, rather than merely an abstract idea." *Ultramercial*, 722 F.3d at 1344 (emphasis omitted). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Alice Corp*, 573 U.S. ___, at ___ (slip op., at 11) (alterations in original). After analyzing the additional limitations imposed by claim 1 of the

---

[4] Amazon uses "cross-selling" and "upselling" interchangeably. In order to maintain consistency with the nomenclature, the Court will refer to the method embodied in the claims as "upselling."

5

'513 patent, the idea of upselling has not been sufficiently limited to prevent the claim from "cover[ing] the full abstract idea itself." *Accenture,* 728 F.3d at 1341.

Tuxis maintains that claim 1 does not pre-empt the concept of upselling because the claim limitations sufficiently narrow its scope. The full text of claim 1 is provided above, but it can be broken down into the following main steps:

1) establishing a communication with a user over an electronic communications device wherein the user initiates the purchase of a good or service;

2) obtaining data about: the user's identity, the good or service purchased, and a second data element relating to the user;

3) generating an upsell offer based on the second data element related to the identity of the user and the good or service purchased;

4) offering the upsell item and receiving an acceptance in real time.

According to Tuxis, prior methods of upselling suffered from information deficits and therefore were unable to accurately predict what the customer wants. (D.I. 12, p. 2). The method embodied in claim 1, Tuxis argues, overcomes this by basing its upsell recommendation on novel combinations of data, namely the "identity of the good or service of the primary transaction and the second data element [related to the user]." (*Id.* at p. 8 (alteration in original)). Moreover, the whole transaction is performed in real time using an electronic communications device. '513 patent, claim 1. Based on these limitations, Tuxis highlights twelve large classes of previously known upsell techniques that are excluded by claim 1's limitations, including:

> 1) upselling not based on remote commerce, 2) upselling based on the customer's prior purchasing history but not the identity of the primary good or service, 3) upselling based on the amount a customer has spent in the past but not the identity of the primary good or service, 4) upselling provided some time after the primary transaction, 5) upselling based on how long ago a customer shopped at the business but not the identity of the primary good or service, 6) upselling based on items

6

> infrequently purchased in the past but not the identity of the primary good or service, 7) upselling based on loyalty card information or reward systems, 8) upselling based on history of coupon use by a customer but not the identity of the primary good or service, 9) upselling not based on a primary transaction, 10) upselling based on pushed goods or services provided in a non-targeted manner, 11) upselling based on the current purchase but not on information about the customer, and 12) upselling based on information about other people or groups of people, but not on information relating to the customer.

(D.I. 12, pp. 8-9).

None of the limitations recited by Tuxis, however, are "meaningful." *Ultramercial*, 722 F.3d at 1344. Although the claim elements have some narrowing effect on the scope of claim 1, the practical effect is insubstantial, as evidenced by the categories of upselling provided by Tuxis that are not covered by claim 1. Six of the twelve categories reserved for the public involve recommending a second item without using the identity of the good or service purchased in the initial transaction (D.I. 12, pp. 8-9 (numbers 2, 3, 5, 6, 8, and 9)), and two more do not rely on information relating to the customer. (*Id.* (numbers 11 and 12)). The four remaining categories are: upselling not based on remote commerce, upselling not conducted in real time, upselling based on loyalty card information, and upselling based on non-targeted pushed goods. (*Id.* (numbers 1, 4, 7, and 10, respectively)). Reserving for the public these narrow methods of upselling does not "meaningful[ly]" limit the abstract idea. Allowing claim 1 would permit the general concept of upselling to be patented, which pre-empts its use in all fields and "effectively grant[s] a monopoly over an abstract idea." *Bilski*, 130 S. Ct. at 3231.

Additionally, claim 1 lacks an "inventive concept." There is no "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice Corp*, 573 U.S. ___, at ___ (slip op., at 7) (alteration in original). Claim 1 requires nothing more than suggesting an additional good or service, in real time over an electronic communications device, based on certain information

7

obtained about the customer and the initial purchase. Shrewd sales representatives have long made their living off of this basic practice. A simple hypothetical is instructive: A man enters a clothing store to purchase a new pair of dress slacks ("a user initiated primary transaction for the purchase of a good or service"). The sales representative assists the man in finding a pair of pants, and in the process learns that the man is a banker ("a second data element relating to the [identity of the customer]"). Knowing that suspenders are fashionable in the banking profession, the sales representative offers the banker a pair of suspenders that match his pants ("utilizing at least in part the primary transaction data including the identity of the good or service of the primary transaction and the second data element [related to the customer] and determining at least one item for a prospective upsell"). The customer agrees with the sales representative and purchases the suspenders ("receiving an acceptance of the offer . . . in real time"). This type of marketing strategy is at the heart of claim 1 and has been practiced as long as markets have been in operation. Conduct this transaction on "an electronic communications device" instead of in a physical store and it would be an infringing sales practice if claim 1 were valid. This cannot be permitted, as it would "tend to impede innovation more than it would tend to promote it." *Mayo*, 132 S. Ct. at 1293.

Moreover, the fact that the upsell item can be recommended "in real time" using a computer does not save claim 1 because the computer must be "integral" and facilitate "the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."); *Alice Corp*, 573 U.S. ___, at ___ (slip op., at 15) (invalidating claims that amounted to "'nothing significantly more' than

8

an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) ("Simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."). As demonstrated above, a computer is not an integral part of the claim here. A human being can generate an upsell recommendation "during the course of the user initiated communication," although perhaps not with the efficiency or speed of a computer. The computer performs nothing more than purely conventional steps that are well-understood, routine, and previously known to the industry. *See Alice Corp*, 573 U.S. ___, at ___ (slip op., at 15). Therefore, the addition of an electronic communications device does not save claim 1 from invalidity.

Finally, to the extent the Plaintiff argues the patent in this case is similar to the patent in *Ultramercial* and therefore should be found to be patentable, the Court disagrees. In *Ultramercial* the Federal Circuit found that the claim was patentable in part because the patent claimed a "particular internet and computer-based method for monetizing copyrighted products." *Ultramercial*, 722 F.3d at 1350. According to the Federal Circuit, "the claim [in *Ultramercial*] appears far from over generalized, with eleven separate and specific steps with many limitations and sub-steps in each category." *Id.* at 1352-53. In addition, the steps recited in *Ultramercial* were more than "token pre- or post-solution steps," *i.e.*, "they are central to the solution itself." *Id.* at 1347, 1352. Here the '513 patent fails to limit claim 1, other than to confine the claim to real time upsell offers based on particular pieces of information that are transmitted over an electronic communications device. This is not a practical application with concrete steps, and is far less patentable then what was claimed in *Ultramercial*. Claim 1 "simply append[s] conventional steps, specified at a high level of generality," to an abstract

9

idea. *Mayo,* 132 S.Ct. at 1300. The Supreme Court's decision to vacate and remand *Ultramercial* to the Federal Circuit for further Consideration in light of *Alice Corp* further undercuts any reliance on this precedent.

Because the evidence is clear and convincing that claim 1 of the '513 patent is directed towards an unpatentable abstract idea, it is invalid under 35 U.S.C. § 101.[5]

## IV. CONCLUSION

For the reasons stated above, the Motion of Amazon.com, Inc. to Dismiss for Failure to State a Claim (D.I. 10) is granted with respect to claim 1. An appropriate Order will follow.

---

[5] The machine-or transformation test, which is no longer the "sole test" for patentability, does not alter my view on the patentability of claim 1. *Bilski,* 130 S. Ct. at 3225-26.