IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TUXIS TECHNOLOGIES, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>        Defendant. | Civil Action No. 13-1771-RGA |

## MEMORANDUM OPINION

Brian E. Farnan, Esq., FARNAN LLP, Wilmington, DE; Andrew G. Heinz, Esq. (argued), DESMARAIS LLP, New York, NY.

    Attorneys for Plaintiff Tuxis Technologies, LLC.

Steven J. Balick, Esq., ASHBY & GEDDES, Wilmington, DE; William H. Baumgartner, Jr., Esq. (argued), SIDLEY AUSTIN, LLP, Chicago, IL.

    Attorneys for Defendant Amazon.com, Inc.

March 25, 2015

*/s/ Richard G. Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Amazon's Motion to Dismiss for Failure to State a Claim. (D.I. 10). The motion has been fully briefed (D.I. 11, 12 & 14), and oral argument was held on May 23, 2014. (D.I. 21). Amazon's Motion to Dismiss was granted with regard to claim 1 of the '513 patent on September 3, 2014. (D.I. 23). Familiarity with the Court's prior opinion (D.I. 22) is presumed. The parties submitted additional briefing on the remaining asserted claims (D.I. 25, 26 & 27), and notices of subsequent authority.[1] (D.I. 28, 29 & 30). For the reasons that follow, Amazon's Motion to Dismiss is granted with respect to all of the asserted claims of the '513 patent.

## I. BACKGROUND

Tuxis has identified 100 claims of the '513 patent as asserted, out of a total of 267 claims.[2] (D.I. 25 at 3 n.1). In its supplemental briefing, Tuxis specifically cites claims 47, 140, and 259 to support its argument in opposition of Amazon's Motion to Dismiss. Therefore, I focus my analysis on the claims Tuxis relied upon in its briefing.

## II. LEGAL STANDARD

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court

---

[1] Amazon submitted the Federal Circuit's decision in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), and the United States District Court for the Central District of California's decision in *Wolf v. Capstone Photography, Inc.*, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014). (D.I. 28). Tuxis submitted the Federal Circuit's decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). (D.I. 29).

[2] Tuxis has identified the following claims as asserted: 1, 2, 4, 5, 6, 18, 19, 20, 28, 32, 33, 36, 37, 38, 39, 40, 41, 44, 46, 47, 48, 52, 53, 54, 56, 57, 58, 59, 60, 67, 68, 70, 73, 77, 88, 89, 90, 91, 92, 93, 94, 95, 97, 98, 99, 111, 112, 113, 121, 125, 126, 129, 130, 131, 132, 133, 134, 137, 139, 140, 141, 145, 146, 147, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 168, 169, 171, 175, 176, 177, 179, 180, 181, 183, 184, 185, 186, 187, 189, 194, 196, 210, 216, 255, 256, and 259.

1

has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm" as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357 (internal quotation marks omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological

2

environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610 (2010) (internal quotation marks omitted)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007). At the motion to dismiss stage, any proposed claim constructions of the non-moving party should be accepted.

The Federal Circuit has held that it is not required for a district court to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

## III. DISCUSSION

In applying the two-step framework outlined in *Alice*, it is clear that all of the asserted claims of the '513 patent are drawn to patent-ineligible subject matter. The claims are directed to the abstract idea of "upselling," which is a longstanding commercial practice. While limitations narrow the scope of the claims, these limitations do not amount to an "inventive concept." Therefore, all of the asserted claims of the '513 patent are invalid.

### A. Abstract Idea

Under the two-step *Alice* framework, the Court must first determine whether the claims at issue are directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355. Tuxis argues that the claims are not directed to the abstract idea of upselling, but rather to "particular ways to implement upselling in connection with a particular type of commerce—remote electronic commerce." (D.I. 27 at 4). Tuxis argues that "[t]he remote electronic commerce aspect of these claims is what creates the very problem that the patent addresses, as it makes upselling far more complicated because the customer cannot be seen." (*Id.* at 5). Tuxis claims that "[t]he patent and claims at issue address this problem by modifying the prior art electronic commerce systems to enable customer-specific upselling, which no one had figured out how to do on remote commerce systems before the patent." (*Id.* at 6). The Federal Circuit has made clear, however, that "the addition of merely novel or non-routine components to the claimed idea" does not "necessarily turn[] an abstraction into something concrete." *Ultramercial*, 772 F.3d at 715. Further, "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis." *Id.* The fact that the upselling occurs remotely and/or over the Internet does not make the claimed subject matter non-abstract.

4

In my prior opinion addressing the patent-eligibility of claim 1, I found that the claim was directed to the abstract idea of upselling. (D.I. 22 at 6). For support, I relied upon Tuxis's statements that "[t]he '513 patent claims improved methods and systems for upselling," and that "the claims are patent-eligible because they are meaningfully limited and do not pre-empt use of that abstract concept." (D.I. 12 at 11–12). Tuxis's arguments in its supplemental briefing have not changed my opinion, and I find that the asserted claims of the '513 patent are directed to the abstract idea of upselling. Therefore, the claims are directed to patent-ineligible subject matter.

**B.     Inventive Concept**

After determining that the claims are directed to an abstract idea, the Court must determine whether the claims contain an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. Tuxis argues that claims 47 and 140 meaningfully limit the abstract concept by applying "negative rules" to upselling. (D.I. 25 at 5). For example, claim 46, on which claim 47 depends, recites: "The method of claim 1 wherein negative rules are applied in the step of determining the at least one good or service item for prospective upsell to the prospective customer." (D.I. 1-1 at 27, 29:57–60). Claim 47 recites: "The method of claim 46 wherein the negative rule includes not offering for upsell an item determined to already be possessed by the user." (*Id.* at 27, 29:61–63). Claims 139 and 140 are dependent on claim 94, a system claim, but are otherwise substantially the same. (*Id.* at 29, 33:28–34). Tuxis also relies on the '513 specification, which states that "[t]he selection criteria may include negative decision criteria, such as not trying to upsell a customer on an item that the system knows he has previously purchased, or has previously been offered but declined to purchase." (*Id.* at 24, 24:14–17). Tuxis argues that "[u]psell techniques are generally concerned with suggesting an additional good or service the customer might be

5

interested in—they are not typically concerned with excluding potential goods or services from the customer." (D.I. 25 at 6). I disagree. The fundamental premise behind upselling is determining what a customer wants or needs based on information learned about that customer.[3] This includes information about what the customer has already purchased or has declined to purchase in the past.

Tuxis argues that claims 47 and 140 exclude in-person upselling because they "require additional prior knowledge concerning items the customer already owns, and restricting upsell offers based on that information." (*Id.*). Tuxis argues that these negative limitations meaningfully limit the claims by "exclud[ing] techniques that do not rely on determination of what a user already possesses and/or techniques that do not exclude upsell items based on that determination." (*Id.*). Salespersons, however, have always been able to keep written or mental notes about a customer's purchase history, including the customer's likes and dislikes.[4] This practice allows the salesperson to avoid offering items that the customer has already purchased or has declined to purchase in the past. Thus, the negative limitations in the claims are "well-understood, routine, conventional activity," which have long been used for in-person upselling. *Ultramercial*, 772 F.3d at 715. The maintenance of customer information is a basic computer

---

[3] The sales manual of a prominent retailer, in existence well before the patent in question, provides evidence of this concept: "Upselling means becoming aware of a customer need and satisfying it. Many times, a customer might not even be aware of his/her needs. . . . Whenever attempting to upsell, explain to the customer why the upscale merchandise is a better value and how it will satisfy their needs." *Pitching by the Script—Excerpts from Rent-A-Center's Sales and Service Manual Dated February 1993*, Wall St. J., September 22, 1993.

[4] Knowing the customer has always been a fundamental tenet of successful salespersons:
> "[A]mong the special fields of knowledge in which the salesman must become proficient, is that of knowledge of people. . . . [This] means knowledge of what people think, of how they feel, of what they do, of the things they like and dislike, their customs, habits, observances, their ways of living, their food, clothing, shelter, amusements, their education, their social classes, their ways of making a living, their home surroundings, religions, and societies. . . . What a salesman knows about his customers governs to a great degree what he will say to them, what articles to show, and what selling arguments to use.

Paul Henry Nystrom, *Retail Selling and Store Management* 30–31 (1914).

6

function that consists "solely of mental steps which can be carried out by a human using pen and paper." *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014).[5] The Federal Circuit has held that "mere [data-gathering] step[s] cannot make an otherwise nonstatutory claim statutory." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (alterations in original) (internal quotation marks omitted). Therefore, the elements of claims 47 and 140 "both individually and as an ordered combination" provide "routine additional steps" that do not transform the abstract idea of upselling into patent-eligible subject matter. *Ultramercial*, 772 F.3d at 715–16.

Tuxis also argues that claim 259 meaningfully limits the claimed subject matter, reciting:

> A method for providing offers and receiving acceptances in real time to effect a transaction regarding an item constituting a good or a service between prospective customers as users of the system and the system, utilizing an electronic communications device, including a computer, comprising the steps of:
> establishing communication via the Internet between the user's computer and the system for purpose of a primary transaction comprising an Internet purchase transaction,
> obtaining primary transaction data with respect to the transaction, including the identity of the prospective customer,
> obtaining at least a second data element relating to the user,
> utilizing at least in part the primary transaction data and the second data element in determining at least one good or service item for prospective upsell to the prospective customer,
> displaying from the system via the Internet an image of the item to the prospective customer on the user's computer in real time during the course of the communication, and
> receiving an acceptance of the offer from at least one user via the Internet to the system to consummate the transaction.

(D.I. 1-1 at 32, 39:58–40:17). Tuxis argues that "[c]laim 259 requires establishing communication via the Internet between the user's computer and the system, which is narrower than the corresponding limitations of claim 1 that require establishing a communication via an

---

[5] The Court understands this is not a precedential opinion.

electronic communications device." (D.I. 25 at 7). Tuxis claims that requiring communication over the Internet "meaningfully limits the claim because it excludes in-person sales techniques." (*Id.*). This argument is unpersuasive in light of the Supreme Court's *Alice* decision. The Supreme Court made clear that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358. Further, the Federal Circuit has recently held that invocation of the Internet does not add an inventive concept, and that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101." *Ultramercial*, 772 F.3d at 716. Unlike the claims in *DDR*, claim 259 "merely recite[s] the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Communication is a "routine [and] conventional use of the Internet," which does not transform the abstract idea of upselling into patent-eligible subject matter. *Id.* at 1259.

      Tuxis argues that claim 259 further distinguishes itself from in-person upselling because it "requires displaying an image of the item to the prospective customer in real time." (D.I. 25 at 8). Tuxis notes that Internet sales are different from in-person sales "because the customer cannot see the goods or services available for purchase." (*Id.*). Tuxis also points out that "there is no evidence that Internet upsell techniques involving pictures . . . were known in the prior art." (*Id.*). There is no meaningful difference, however, between showing a customer a picture of an item and showing the customer the actual item itself. Further, displaying an image over the Internet is a basic computer function that "add[s] nothing of practical significance" to the abstract idea of upselling. *Ultramercial*, 772 F.3d at 716. The Federal Circuit has made clear that "the transfer of content between computers is merely what computers do and does not

8

change the [patent-eligibility] analysis." *Id.* at 717. Tuxis's novelty argument is also unavailing because novelty is not the issue when determining patent-eligible subject matter. *See Parker v. Flook*, 437 U.S. 584, 588 (1978). The mere fact that some claim elements were not previously employed in the art, alone, is not enough to confer patent-eligibility onto the asserted claims. *Ultramercial*, 772 F.3d at 716. Therefore, the elements of claim 259 "both individually and as an 'ordered combination'" do not provide an inventive concept, and are directed to patent-ineligible subject matter.

Finally, Tuxis relies on the arguments in its initial briefing (D.I. 12) to support its assertion that all of the remaining asserted claims are directed to patent-eligible subject matter. (D.I. 25 at 8). All of the claims of the '513 patent, however, "are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. Therefore, in light of my previous decision invalidating claim 1 (D.I. 22), and this decision invalidating claims 47, 140, and 259, I find that the remaining asserted claims are patent-ineligible.

## IV. CONCLUSION

For the reasons stated above, Amazon's Motion to Dismiss is granted with respect to all of the asserted claims of the '513 patent. A separate Order consistent with this Memorandum Opinion will be issued.

9